1741-74 Robert Kalvitz v. Christopher D. Randolph et al. Oral argument, 15 minutes per side, Ms. Surratt for the defendants' appellants. Good morning, Your Honors. Marisa Surratt here on behalf of the appellants and defendants in this case who are all individual off-duty Cleveland police officers. I would like to reserve three minutes for rebuttal. Jeffrey Fulmer, Stephen Kinas, and Christopher Randolph were all off-duty on May 17, 2014, when they were working at a private institution called the Zone Car Lounge. The Zone Car Lounge is owned and operated by the Cleveland Police Patrolmen's Association, completely separate from the City of Cleveland, their current employer at the time. In this case, the bar is actually an underground bar with one entrance at the front, one entrance at the back. Taking the plaintiff's allegations as true, which is what we must do, we are arguing that these officers are entitled to qualified immunity based upon the fact that Mr. Kalvitz posed a serious and dangerous threat to the hundreds of patrons in the bar that night. Well, that requires accepting your client's view of things rather than Mr. Kalvitz's view of things. Yes. Mr. Kalvitz does not deny that he possessed that two-inch knife, and he does not deny that he possessed a padlock with a handkerchief tied on it, which can also be used as a weapon. And he disputes what his behavior was at the time he first encountered the officers. But he does not dispute that he possessed and brandished a deadly weapon. And the possession and brandishing of a deadly weapon, although he is claiming that it was in self-defense as of his interaction with these Detroit supervisors, including a Detroit sergeant, two other Detroit police officers. If he earlier possessed a weapon, if he is, as he claims, posing no threat to the officers at the time of their first encounter with each other, the defendants would not be entitled to beat him up because he had a knife earlier, would they? No. What we are arguing is something that's not disputed, is that at the time, according to the plaintiff's allegations, at that time, there was a dispute. There was a verbal dispute that is not denied, and then that turned physical in some aspect. That is not denied. Mr. Kalvitz says at some point that he was being assaulted by these Detroit police officers. Obviously, there are some factual issues there, but taken the allegations as made by Mr. Kalvitz in this case, we would argue that at that point, the officers have a right to seize this individual and search him pursuant to that seizure. As such, the seizure in this case, taken the allegations by the plaintiff, was lawful. Given the fact that the seizure was lawful, there's no constitutional violation. Doesn't he say that he was on the floor, handcuffed, and they beat him and kicked him? After the unlawful seizure. They're relying on... But you agree that would be excessive force, right? If you handcuff somebody, put him on the ground, and kick him and beat him, no qualified immunity, right? That would be an issue of fact that would be determined for the jury. And that's in his declaration, isn't it? Well, but we are arguing in piecemeal part, as can be considered in qualified immunity. A majority of his complaint relies upon the fact that he was unlawfully seized, that he was unlawfully searched incident to that seizure. And we believe that these officers would be entitled to qualified immunity for the unlawful seizure that they are alleging, as well as the unlawful search incident to arrest. That qualified immunity, based on the facts alleged by the plaintiff, in a piecemeal approach to what occurred here, any officer... You're saying he's not making an excessive force claim? We are saying that he's making multiple claims. The complaint alleges... You're saying he's making three claims, you don't get qualified immunity on one of them, but you get qualified immunity on two of them? Correct. That these officers would be... Well, of course, we would never concede that the use of force was reasonable given the circumstances. But essentially, the crux of our argument here is based on the fact that these officers, had they reacted, as alleged by the plaintiff, that they were lawful in seizing him. This individual, Mr. Calvitz, was never arrested that day. He was seized. And as this court knows, in a criminal case pursuant to an investigation, officers, given circumstances such as these, would be permitted to seize an individual. And at that point, when you seize them, you search them. And upon this search, two weapons, including a deadly weapon of a two-inch knife, were discovered. As such, the plaintiff should not be allowed to go forward with any claims that he was unlawfully seized and that he was unlawfully searched incident to that arrest. With no constitutional violation to the seizure itself, there can be no 1983 claim to the seizure and the search incident to that seizure. At that point, we are now on to the third issue that you have arisen, which is the allegations that there was some unlawful use of force once this individual was detained and seized. Because, as we know, he was not arrested. The court erred in this case by not considering the individual analysis of these three officers. They were considered as a whole. And that went to both acting, whether or not all three of these officers were independently acting under color authority that night, as well as the consideration that all three of these officers acted equally in their actions and interactions with Mr. Kalvetz. And considering the factual allegations in this case, we would argue that you must also consider the reasonable inferences, which the record does not dispute, is that he possessed that deadly weapon and that he was lawfully seized. Are you talking about when they beat him up? The allegation of after the seizure that there was an unlawful use of force. So we should – there's some inference to be drawn by the fact that he had a knife? I'm sorry, does that justify them exercising force? No. Officers are permitted to use force until the threat has been neutralized. And that is obviously – But don't you think his declaration, at least with respect to that part of it – I mean, taking his declaration as true, he wasn't a threat at that point, right? He was on the floor. He was handcuffed. And his declaration is contested by his interrogatory answers as well as the complaint itself and further contested by reasonable inferences that can be made on the record, which is that – But they all have to be drawn in his favor, right? Unless if – I would argue that when two parties tell different stories, one of which is blatantly contradicted by the record so that no reasonable jury can believe it, a court should not adopt that version of the facts for purposes of ruling on a motion. You're arguing here for a version of the facts. It's not even the version of the facts that your clients put forward. I mean, factually, their argument is that somebody else did this. Correct. And that is the plaintiff's actual argument as well because in his complaint, the plaintiff states our three off-duty police officers were responsible for this as well as some other unknown alleged officers, yet there's no John Doe, Jane Doe, or anyone else alleged as a defendant in this case. We would further argue that that is one of the major errors that the court did, was that they did not conduct a separate analysis for each one of these three individuals based on the allegations contained in the complaint and the declaration by Mr. Calvitz. In addition – You're talking about an individualized determination for the three defendants with respect to all three of the claims or just the excessive force claim? Correct. With all three of the claims as well as the color of law claim. As this court knows, we are not allowed to proceed on a 1983 claim unless there is some evidence that these officers were acting under color law. And we would say that under a law determination, the court erred by considering the fact that Mr. Calvitz knew these three officers to be police officers. We believe that that would be an impermissible factor. This is a cop bar. This is a private bar that typically only allows cops and relatives of cops and other people. Didn't you say they had their badges and guns? There's an allegation that they have badges and guns, but that alone is not sufficient. That would be sufficient to find, arguably, that they were acting under color of law or not off-duty as they claimed. Well, and that would be – Or if they were off-duty, they were nevertheless continuing to exercise the powers of their office. And the records and the declaration of Deputy Chief Jolene O'Neill definitively confirms that they were not on duty or being compensated by the City of Cleveland Police Department for any of their actions that day, Those are some of the main points that we believe that the district court should have piecemealed this out in multiple different ways when considering qualified immunity under summary judgment. There should have been an independent officer analysis for each one of these three individual men taken on the facts alleged by the plaintiff, because that's the standard that we are working under. Which defendant would get qualified immunity and which ones wouldn't? I think that there could be a factual – If you did an individualized? The allegations. And for that, I would even direct the court to the summary judgment opinion by Judge Oliver, where he basically goes through, taking the facts in light and most favorable of the plaintiff, that Kynes and Randolph intervened in the altercation with a Detroit police officer announced wearing Cleveland. According to Kalvitz, both were wearing guns and Kynes was wearing his badge. Fullmore also wore his gun and badge when he joined them to carry Kalvitz outside. So the officer's status would be apparent even though they were not in uniform. Further, they behaved like police officers. Kynes and Randolph worked together to handcuff Kalvitz. Officer Fullmore had absolutely no interaction with the alleged seizure of Mr. Kalvitz. There should have been a separate finding and separate analysis done for each one of these officers. And that is required given these situations. This court has found in the past that when a district court does not conduct a review of an officer's individualized actions, remand for that consideration is warranted. And that was one of the issues that we raised in our brief as well. Further, we believe that the district court, in considering the law in this case, when given the allegations made by the plaintiff, that these officers once again should be entitled to qualified immunity for at least the seizure and the search. The plaintiff frames his complaint as not three separate causes of action. The plaintiff is complaining about being beaten up. Yes. So, I mean, it's really he doesn't frame it as one claim for seizure, one claim for excessive force after seizure, one claim for whatever else you said his claims were. I mean, it's just not parsed out like that in his. But if this court could determine that based on, as a matter of law, that these officers performed as the allegations contained by the plaintiff, that the seizure itself and that the search incident to that seizure was lawful, he would be precluded from presenting any such allegation at trial that the seizure and the search incident. In order to give the relief you want, which is a determination that qualified immunity applies, we would have to hold that it is legal to see somebody and then beat him up, even when he poses no apparent threat to you at the time. I would strongly suggest to you that that's probably not the law. And I am not addressing the secondary factor that you raised there, just that given the facts presented here as alleged by the plaintiff, that he had a knife in a very crowded bar, posed a threat to other individuals, that the seizure and the search incident to that seizure itself was valid. It's a piecemeal qualified immunity approach. And I am out of time, so unless there's further questions, I would reserve the remainder for my rebuttal. May it please the Court. The Court's correct. There's three issues that the defendants are talking about here. We only want a trial on excessive force. If there's no dispute that the right that Judge Gibbons just framed, that a person who poses no threat to the officers cannot be beaten gratuitously when he's laying on the ground in handcuffs, the Court should send the case right back to the district court. We should have a trial on the facts that are disputed about that issue. This appeal demonstrates the opportunity for abuse of these kinds of interlocutory qualified immunity appeals. This case was set for trial in December of 2017. By filing this appeal, by coming to the Court today and not even being able to say that the right at issue is not clearly established, the defendants have delayed this trial for over a year. The Court's opinion in McDonald v. Flake highlighted this problem, just like in that case. Is there one count in the complaint? How does the complaint frame it? The complaint states the allegations as is required by Rule 8, the facts underlying the claim, and alleges that there's a violation of the Fourth Amendment. In briefing on summary judgment, the plaintiff focused on the excessive force claim, and that's exactly what the district court held, that the right at issue was clearly established to not be subjected to gratuitous force when an individual being arrested is not a threat. And are all three of the defendants similarly situated in terms of who carried him upstairs or who handcuffed him or who? The facts found by the facts determined by the district court drawing inferences for the plaintiff are that two of the defendants used force when he was on the ground. All three of the defendants carried him upstairs and threw him to the ground, which is long after he had been handcuffed and neutralized. So are you specific about who did what? Yes, Your Honor. The plaintiff's declaration, which is attached to the plaintiff's summary judgment motion, it's docket entry 37, the first exhibit, and this is starting at page ID 379. In paragraph 9, the plaintiff avers Randolph and Kinas beat, struck, and kicked me while I was on the floor. Paragraph 11, the plaintiff avers that all three defendants carried him out to the alley. These defendants banged me as they carried me up the stairs and then threw me against a concrete wall and to the ground. I believe you asked my opposing counsel whether this kind of conduct could possibly not be known by a reasonable officer to violate the Constitution, and you didn't get a straight answer. There's no court in the country that's going to hold that carrying a handcuffed man who no longer poses a threat and throwing him against a wall and to the ground doesn't violate the Fourth Amendment. What about there's an allegation that Fulmer and Kinas, I don't know how to pronounce those, were each wearing their badges but not the Randolph? So does he have a better argument on whether he was acting under color of state law? The argument for him is different. The question of whether they were acting under a state law is not before this court. Because the court doesn't have jurisdiction to address the qualified immunity question, it certainly doesn't have a jurisdiction to address any pendant issues about the 1983 claim. We don't have jurisdiction because you're saying it's a fact dispute. Well, no, Your Honor. I'm saying we don't have jurisdiction because there's no jurisdiction for the qualified immunity appeal. Right, because it hinges on differences in facts, right? The qualified immunity appeal is not before this court because the defendants have refused to accept the plaintiff's facts and because they're not even making a qualified immunity argument that the right at issue wasn't clearly established, that we had a motion to dismiss that was denied and the court very clearly told the defendants, you must accept plaintiff's facts, you must argue that those facts don't violate the Constitution. And the defendants flouted both of those orders. They continue to flout them. And that's why the court should dismiss this appeal, and we believe impose a serious sanction against the defendants for filing it. And because the court doesn't have jurisdiction over that qualified immunity appeal, it can't address the separate question of under color of law. The color of law question is not a qualified immunity question. And it's a secondary evidence-based question, even if it were within the qualified immunity. The court couldn't address it because, like all the arguments the defendants want to make here, it's a quibble with the district court's findings of fact. The Supreme Court settled in, I think, 1995, in the Johnson v. Jones case, the questions of evidence sufficiency. Well, can they get out of the, can they get, well, what about their argument that, well, we don't know, it seems like there's a seizure and a search claim because it's a general Fourth Amendment allegation and it's clearly established that if this guy, or it's not clearly established when this guy poses a danger and has a knife that we couldn't have searched and seized him. So isn't that a clearly established question, I mean, a legal question? Yes, but those claims are not in this case. The question that we're here, that we want to go to trial on, that the judge ruled on, was whether excessive force was used, that these issues of arrest or search, I don't think the facts are sufficient to support what the defendants are arguing, but that's not an issue that was passed on in the district court, and it's not an issue that was properly presented for this court. You're saying he's just a straw man to try to invent a legal argument? Yes, Your Honor. And I think that these weren't issues that were fleshed out in the brief. I think that there was, to the extent, I'm thinking back to the brief, there was an argument made by the defendants about the arrest, and in response to that, plaintiffs stated pretty clearly, we don't have a claim about the arrest. We don't have a claim that he was seized, that the officers couldn't arrest him. Our claim is they used excessive force against him. And I think that the way that defendants want to conflate that is not consistent with the law, that when officers have authority to arrest a person because that person poses a threat, they do not have authority to use gratuitous violence against that person after the threat has been resolved, and when there is no danger to the officers or to any other person. So because the defendants have not raised factual issues that this court can consider in this limited qualified immunity appeal, because the defendants have not shown that the right at issue to be free from gratuitous violence by officers was not clearly established, the court should dismiss the case for lack of jurisdiction. As we've argued, based on the abuse by defendants of the appellate process to extend this case and to disadvantage plaintiffs, the court should enter sanctions to stop these defendants and to stop other parties from abusing the court's process. If there aren't any other questions, I will yield the balance of my time. Thank you. Thank you. In response to my opposing counsel's allegation that this case requires not only dismissal but that it would require sanctions against these three individual Cleveland police officers that effectuated the right to take this interlocutory appeal on questions of law that were presented in the appellant's brief, we would argue that that presents absolutely no basis in fact nor in law. This court typically would only award sanctions in such cases that there was inappropriate filings, inappropriate citations to law, frivolous citations to law, and none of these sorts of things occurred here. The city of Cleveland has chosen not to indemnify these officers. These three Cleveland police officers are being sued independently. They are just as disadvantaged as the plaintiff in this case, and they are sought with the same rights to pursue this qualified immunity interlocutory appeal. But you're really not contesting whether he has a claim for excessive force based on his own allegations. You're saying, well, he doesn't have a seizure or search claim, but his complaint says the excessive and unreasonable force used against plaintiff. You took an appeal about something that's really not subject to the case is the point. In the complaint, it also states defendant Randolph did not have a lawful basis to search the plaintiff. Defendant Randolph did not have a lawful basis to seize the plaintiff's driver's license and watch. That's all on page 3 of the complaint. There has been sufficient allegations made by the plaintiff in this case that Mr. Calvitz was unlawfully seized, an unlawfully searched incident to that seizure. We would argue that based upon the law and the facts presented as presented by the plaintiff, that these officers and any officer in a situation presented to them, a reasonable officer given the circumstances that are undisputed and supported by the fact that Mr. Calvitz possessed a knife in a very crowded bar, would subject him to a lawful seizure and search incident to that, and that officers would be entitled to a piecemeal qualified immunity based on the law and that analysis. Does the district court's opinion say, I'm going to let a seizure and search, I'm denying immunity with respect to a seizure, a search claim, and an excessive force claim? It denied us to all aspects of qualified immunity. But does it mention a seizure claim and a search claim? Does the district judge mention that? I would have to defer to the opinion. I know that those were the allegations that were made by the plaintiff himself. But if he doesn't mention a separate seizure and search claim, did you have a basis for the appeal then? Yes, because we made multiple arguments based upon the law that was presented and the analysis that Judge Oliver made pursuant to that law that's meted out in our brief. But if he didn't recognize that there were those claims in the case, that's what I'm saying. But in addition to that, there were other legal arguments that we have presented that the facts were improperly considered or that certain facts were not considered by the district court. Typically, you appeal things that have been decided by the district court. At this point, my time is up. I would defer to the court's judgment and our appellant's brief as to the issues that we presented at law, unless there's additional questions. Your time is up. We will consider the case carefully. I think that was the last argued case, and the clerk may adjourn court.